[No. 2020.]

## J. L. Jolly v. The State.

1. **Malicious Mischief.**— The erection of a gate across a public road of the first or second class constitutes a public nuisance, which any citizen has the legal right peaceably to abate. If, however, the road be of the third class, the owner of land traversed by it has the right to erect a gate across it, provided he complied with the requirements of the law in the construction of such a gate; and it would be a penal offense to wilfully and negligently leave open such a gate.  But, if the road obstructed by the gate is not a public road of either class, then the leaving open of such a gate would be a violation of article 684 of the Penal Code.

2. **Same — Charge of the Court.**— The defense to a prosecution for wilfully and negligently leaving open the gate to the inclosure of another was that the gate was an obstruction to a public road, and therefore a public nuisance.   The charge of the court defined a public road as follows: "A public road is one that has been laid out and opened by order of the commissioners' court."  *Held*, that, in limiting the public character of a road to one that has been laid out and opened by an order of the commissioners' court, the charge was erroneous.

3. **Same — Special Charge,** to the effect that "the character of a road may be established as public by evidence of long continued use as such, and by an order of the commissioners' court assigning hands to work on it as a public road," was erroneously refused, inasmuch as it announced the correct rule.

4. **Same — Practice.**— The evidence, though it failed to disclose that the road obstructed in this instance was ever classified by the commissioners' court, established its long use by the public as a public road, and its recognition as such for a series of years by the commissioners' court.   Under such circumstances, the charge of the court should have properly submitted to the jury

to determine whether or not the facts proved constituted the road a public road. If the road was a public road, no conviction could be had under this indictment (framed under article 684 of the Penal Code), although it may have been a third class road, because, in such case, the defendant could only be prosecuted under article 413 of the Penal Code as amended at the special session of the Eighteenth Legislature.

APPEAL from the District Court of Cass. Tried below before the Hon. W. P. McLean.

The conviction in this case was had under an indictment charging the appellant with the violation of article 684 of the Penal Code, in that he wilfully, and without the consent of the owner, broke open and left open a certain gate leading into the inclosure of one Green Floyd. The venue of the offense was laid in Cass county, and it was alleged to have been committed on the 1st day of May, 1884. The fine assessed against the appellant was in the sum of $70.

The opinion sufficiently discloses the case.

*O'Neal & Son*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WILLSON, JUDGE. This prosecution is under article 684 of the Penal Code, which makes it an offense to wilfully, and without the consent of the owner, open and leave open any gate leading into the inclosure of another.

It appears from the evidence in the case that the defendant pulled down and left open a gate leading into an inclosure owned by one Floyd, and that the act was done without the consent of said Floyd. It further appears, however, that Floyd had erected this gate across a road which is claimed by the defendant to have been, at the time he left said gate open, a *public* road. This road was originally opened for the private use of the owner of the land over which it passed. At the time Floyd placed the fence across the road, said road had been used by the public for fifteen or twenty years.

In 1876, the commissioners' court of Cass county appointed an overseer of said road, and apportioned hands to work upon it, and said road was traveled and recognized as a public road up to the time Floyd erected the gate across it in May, 1884, and was regularly worked as a public road under authority of said commissioners' court from 1876 up to the time Floyd fenced it in. It does not appear from the evidence that the commissioners' court classified said road.

If the road was a public road of the first or second class, Floyd had no legal right to obstruct it by erecting a gate across it. Such obstruction would constitute a public nuisance, which any citizen would have the legal right peaceably to abate. (1 Bish. Cr. Law, §§ 828, 1080, 1081.)

If, however, the road was of the *third* class, Floyd had the legal right to place a gate across it, provided he complied with the requirements of the law in the construction, etc., of such gate. (Rev. Stats., art. 4389; Gen'l Laws 13th Leg., Spec. Session, p. 18 and p. 23.) And in such case it would be a penal offense to wilfully or negligently leave open such gate. (Gen'l Laws 18th Leg., Spec. Session, p. 18.)

If the road was not a public road of either class, then the defendant had no legal right whatever to interfere with the gate, and the facts show him to be guilty of the offense denounced by article 684 of the Penal Code, under which he has been convicted.

Whether or not the road was a public road was a most important issue in the case. We have seen what the evidence was upon this issue. In his charge to the jury the court defined a public road as follows: "A public road is one that has been laid out and opened by order of the commissioners' court." No other definition or explanation of a public road was given in the charge. Defendant's counsel requested the following special charge, which was refused: "The character of a road may be established as public by evidence of long continued use as such, and by an order of the commissioners' court assigning hands to work on it as a public road."

We are of the opinion that the court erred in its charge in instructing the jury as to what constituted a public road, limiting them to a road that had been laid out and opened by order of the commissioners' court, and erred further in not giving the special instruction requested by defendant's counsel. "A road may be shown to be public, by other evidence than the production of the order of the county court establishing it as such." (*Mc Whorter* v. *The State,* 43 Texas, 666; *Michel* v. *The State,* 12 Texas Ct. App., 108; *Berry* v. *The State,* id., 249; *Hall* v. *The State,* 13 Texas Ct. App., 269.)

In this case the road in question was proved to have been used by the public as a public road for fifteen or twenty years, and to have been recognized and regularly worked as a public road, by order of the commissioners' court, for about seven years. It should have been submitted, under proper instructions, to the jury to determine whether these facts did not constitute the road a public one. Upon the determination of this issue mainly depended the guilt or inno-

cence of the defendant. If the road was a public road, no conviction could be legally had under this indictment, although it might have been a third class public road, because in such case the defendant could only be proceeded against for the offense defined in article 413 of the Penal Code, amended by General Laws 18th Leg., Spec. Session, p. 18.

Because of the errors mentioned the judgment is reversed, and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered October 24, 1885.]